IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Petitioner, <br><br> v. <br><br> **George Pate,** and <br> **Cookie Pate,** <br><br> Respondents. | No. 2:15-mc-9003-SRB |

## REPORT AND RECOMMENDATION

On August 26, 2015, the United States filed a petition to enforce four administrative summonses issued to George Pate and Cookie G. Pate in April 2015 and June of 2015 by the Internal Revenue Service ("IRS"), pursuant to 26 U.S.C. § 7602 and 26 C.F.R. § 301.7602-1. (Petition to Enforce Internal Revenue Service Summons and supporting exhibits including copies of summonses, doc. 1).

The April 2015 petition was personally served on April 16, 2015, by Revenue Officer Mark Boston ("Officer Boston") by leaving the summonses at George and Cookie G. Pate's last and usual place of abode with their adult son, Mit Patel. On June 4, 2015, George Pate and Cookie G. Pate appeared before the IRS in response to the April 2015 summons. At the meeting George Pate and Cookie G. Pate declined to answer any questions posed by Revenue Officer Boston asserting Fifth Amendment privilege.

The June 2015 summonses were personally served on June 4, 2015, by Officer Boston by personally handing them to both George Pate and Cookie G. Pate at the IRS office in St. Louis, Missouri. Neither George nor Cookie G. Pate (the Pates) appeared to testify as required by the June 4, 2015 summonses. Instead the Pates produced a portion of the documents sought by the summonses, specifically, W-2's and K-1's for the tax years 2012 and 2013. The Pates failed to produce any other records sought by the June 4, 2015 summonses, including (1) "Forms 1099 for interest and dividend income"; (b) "employee earnings statements"; (c) "records of deposit with banks or other financial institutions"; (d) "documents and records about any income you

1

assigned to any other Person or entity"; and (e) "other books, records, documents and receipts for income from, but not limited to the following sources: wages, salaries, tips, fees, commissions, interest, rents, royalties, alimony, state or local tax refunds, annuities, life insurance policies, endowment contracts, pensions, estates, trusts, discharge of indebtedness, distributive shares of partnership income, business incomes, gains from dealing in property, and any other compensation for services (including receipt of property other than money)."

On August 26, 2015, the United States moved for an order to show cause why George Pate and Cookie G. Pate should not be compelled to obey the April 2015 and June 2015 summonses (doc. 1). On August 28, 2015, the Court issued an Order to Show Cause ordering the Pates to appear before the undersigned on November 5, 2015, to show cause why they should not be compelled to obey the IRS summonses issued to them in April 2015 and June of 2015. (Doc. 3). The Court further ordered the Pates to file with the Court and serve on the Government a written response to the petition with supporting affidavits. On September 28, 2015, the Pates' legal counsel, Mark Milton, filed an Acceptance of Service on the Pates' behalf dated September 16, 2015. On September 28, 2015, the Pates filed a response to the order to Show Cause. (Doc. 5). The Government filed reply suggestions in support of the motion. (Doc. 6).

Both George and Cookie G. Pate appeared at the November 5, 2015 show cause hearing represented by their legal counsel Mark Milton. Russell Edelstein, a Trial Attorney with the Tax Division of the IRS, appeared on behalf of the IRS/Government.

I. **Findings of Fact**
    1. Revenue Officer Mark Boston is employed by the IRS as a Revenue Officer assigned by the IRS to conduct an investigation with respect to the collection of tax debts owed by George Pate and Cookie G. Pate for the tax years 2008 and 2009, as well as liabilities owed (pursuant to 26 U.S.C. § 6672) by George Pate arising from his failure to pay social security taxes for the quarters ending September 2010, December 2010, March 2011, June 2011, September 2011 and December 2011.[1]

---

[1] "Mark Boston" is an IRS approved alias utilized by Officer Boston as a result of personal threats he received in a prior unrelated case.

2

2. On April 2015 in furtherance of his investigation, Officer Boston, issued a summons directed to respondents George Pate and Cookie G. Pate. Officer Boston served an attested copy of the summons on the Pates by leaving the summons at George and Cookie G. Pate's last and usual place of abode with their adult son, Mit Patel. The summons required the Pates to appear before Officer Boston on May 4, 2015, at 9:15 a.m. and to "give testimony and to bring with [them] and to produce for examination the following books, records, papers and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown." The summons also directed the Pates to "[p]rovide clarification and testimony to the method and sources of all funding/paying of all personal living expenses from 01/01/2015 to current." The Government concedes that the call for the production of documents request in the text of these April summonses failed to list any specific documents, therefore, these April summonses required only that the Pates provide oral testimony to the IRS. (Doc. 6, Reply Memorandum, pg. 2).
3. The administrative steps required by the Internal Revenue Code were followed in the issuance of the April 2015 summonses.
4. Upon agreement of Officer Boston with the Pates' request to extend the May 4, 2015, scheduled date to give testimony, as date identified in April summonses, the date to give testimony was extended to June 4, 2015.
5. The information sought in the April 2015 summonses is not in the possession of the IRS and is relevant and necessary to Revenue Officer Boston's assignment to determine George Pate's and Cookie G. Pate's tax debts owed for the tax years 2008 and 2009, as well as liabilities owed (pursuant to 26 U.S.C. § 6672) by Gorge Pate arising from his failure to pay social security taxes for the quarters ending September 2010, December 2010, March 2011, June 2011, September 2011 and December 2011.

3

6. George Pate and Cookie G. Pate appeared before Officer Boston on June 4, 2015, in response to the April 2015 summonses.  Both George Pate and Cookie G. Pate declined to answer questions posed by Revenue Officer Boston (asserting 5th Amendment privilege), and did not produce any documents responsive to the April Summons.
7. Revenue Officer Boston is also assigned by the IRS to investigate the unfiled 2012 and 2013 federal income tax returns of George Pate and Cookie G. Pate. Officer Boston was directed to obtain the tax returns for those years, or in alternative, obtain information in order for the IRS to determine the Pates' tax liabilities for 2012 and 2013.
8. In furtherance of the investigation into the Pates' failure to file 2012 and 2013 tax returns, Officer Boston, on June 4, 2015, issued and hand-delivered IRS summonses to George Pate and Cookie G. Pate while they were in the IRS office in St. Louis, Missouri.  The June 2015 summonses directed both George Pate and Cookie Pate to appear on July 7, 2015, at 9:00 a.m. and 10:00 a.m., respectively.  The summonses further directed that George Pate and Cookie G. Pate "appear before Mark J. Boston an Internal Revenue Service (IRS) officer, to give testimony and to bring for examination the following information related to the tax liability of the person identified above for the periods shown.  All documents and records you possess or control about income you received for the years 2012 and 2013.  These records and documents include, but are not limited to: Forms W-2 (Wage and Tax Statement), Forms 1099 for interest and dividend income, employee earnings statements, and records of deposit with banks or financial institutions.  Also include all other books, records, documents and receipts for income from, but not limited to the following sources: wages, salaries, tips, fees, commissions, interest, rents, royalties, alimony, state or local tax refunds, annuities, life insurance policies, endowment contracts, pensions, estates, trusts, discharge of indebtedness, distributive shares of partnership income, business income, gains from dealings in property and any other compensation for services

(including receipt of property other than money). Include all documents and records about any income you assigned to any other Person or entity. IRS will use this Information to prepare a federal income tax return for the following years when you didn't file a return: 2012 and 2013. We have attached a blank return to guide you in producing the necessary documents and records."

9. The administrative steps required by the Internal Revenue Code were followed in the issuance of the June 2015 summonses.

10. The information sought by the June 2015 summonses, with exception of the IRS Forms 10-99, is not in the possession of the IRS and is relevant and necessary to Revenue Officer Boston's assignment to procure the filing of George Pate's and Cookie G. Pate's unfiled 2012 and 2013 tax returns.

11. Neither George Pate nor Cookie G. Pate appeared to testify as required by the June 4, 2015 summonses. The Pates also failed to provide tax returns for 2012 and 2013. Instead the Pate's produced a portion of the documents sought by the summonses: W-2's and K-1's for the tax years 2012 and 2013. The Pates failed to produce any other records sought by the June 4, 2015 summonses.

12. There was not a criminal referral at any time during this case. While Pates' counsel states that Officer Boston stated "no not yet," in response to Pates' counsel's question "is there a criminal investigation in this case," the evidence clearly establishes there was never a criminal referral made in this case. Officer Boston testified that he does not recall making the "no not yet" statement, but does recall that at some point in the Pates' case, he did discuss a possible criminal referral of the case, but that this was declined because the Pates' case did not meet the criteria for a criminal referral. Officer Boston's Supervisory Revenue Officer, Christopher Rothweiler, confirmed that no criminal referral had every been requested or made in this case, citing that any such referral would have to be approved through himself as the Supervisory Revenue Officer. Supervisory Officer Rothweiler stated that he never

5

received a request for a criminal referral in this case. Rothweiler stated that he believes that Officer Boston probably had a conversation with the IRS fraud technical advisor, back in 2013, but that is as far as it went regarding any possibility of a criminal referral. Supervisory Officer Rothweiler further testified, consistent with Officer's Boston's testimony, that while the law does allow for a tax collection case to be referred for criminal prosecution, he has never seen a case that he has handled referred for criminal prosecution despite his 14 years of employment with the IRS. Supervisory Officer Rothweiler testified that the IRS generally does not pursue enforcement of an IRS summons if a criminal investigation is going to be pursued.

13. While asserting that the Pates cannot be compelled to testify based on their Fifth Amendment privilege, Pates' counsel concedes that the documents identified in the June 2015 summonses are not protected by the 5th Amendment and must be produced.

14. Officer Boston testified that he does not personal animosity against the Pates, citing rather frustration with a case he has had for 2 ½ years with no progress citing inability to get the information he needs.

15. Previous IRS collection actions have been made against the Pates. At the Show Cause hearing IRS Officer/General Program Director Michelle Ellis testified that an IRS action regarding the Pates' 2010-2011 tax liability was settled at the appeals level. No criminal referral was ever made in that case.

16. Officer Michelle Ellis further testified that the Pates' had a local Jefferson City, Missouri accountant, who did their day to day accounting at least through 2013, and that the Pates' tax returns she didn't believe were that complicated.

17. The Pates have continued to assert they need additional time to complete their tax returns for 2012 and 2013. A July 2015 letter from the Pates' new accounting firm in Jefferson City (doc. 5-3) indicated the firm was engaged in assisting with accounting services and tax compliance work related to the Pates' business entities and personal returns.

18. Following the November 9, 2015 show cause hearing, the parties agreed if the Pates filed their 2012 and 2013 tax returns, this would moot the necessity for enforcement of the June 2015 summonses.  The Pates' legal counsel indicated that the Pates needed an additional two to four weeks to complete the returns.  The Court requested the Pates' legal counsel provide an email update regarding the Pates' stated intent to prepare and file 2012 and 2013 tax returns.

19. On December 22, 2015, the Pates' legal counsel indicated that the Pates' CPA "is hoping to complete the 2012 tax return tomorrow, but did not provide a date for completion of the outstanding 2013 tax return."

20. On January 11, 2016, the Government filed a status report with the Court including attached exhibits in support (doc. 9).  As of January 11, 2016, Pates' legal counsel represented to the Government that the 2012 tax return is complete, however is unavailable because it is awaiting review by the client, and that it will take some time to complete the 2013 tax return.

**II.    IRS Summons**

The IRS may issue a summons in order to inquire into any offense connected with the administration of enforcement of the internal revenue laws.  26 U.S. § 7602(b).  Section 7602(c) limits the otherwise open-ended summons authority of the IRS under § 7602(b), providing that an administrative summons may not be issued when a "Justice Department Referral" is in effect.  A Justice Department Referral occurs if the IRS has recommend to the Attorney General that a grand jury investigation of, or the criminal prosecution of, the person be commenced for any offense connected with the administration of enforcement of the internal revenue law, or when a request is made under 26 U.S. C. § 6103(h)(3)(B) for disclosure of return information.

In order to establish a prima facie case for enforcement of a summons, the government must make a "minimal showing" that (1) the summons is for legitimate purpose, (2) the material being sought is relevant to the investigation, (3) the information is not already in the IRS's possession, and (4) the administrative steps required by the Internal Revenue Code have been followed.  United States v. Powell, 379 U.S. 48, 57-58 (1964).  Assertions by affidavit of the

investigation agent that the requirements are satisfied are sufficient to make the prima facie case. United States v. Norwood, 420 F.3d 888, 893 (8th Cir. 2005) (declaration of IRS agent established a prima facie case under the Powell standard). Once the government establishes a prima facie case for enforcement of a summons, the burden shifts to the respondent to show that the Powell requirements have not been satisfied or by showing the enforcement of the summons would represent an abuse of the Court's enforcement powers. United States v. Norwood, 420 F.3d at 893. In contrast to the government's "minimal burden" to make out a prima facie case, the party resisting the summons bears a "heavy" burden of disproving the IRS assertions. Id.

In this case, upon review of the declaration and supplemental declaration of IRS Officer Boston (doc. 1, exh. 2, doc. 6, exh. 1) and declaration of IRS Officer Michelle Ellis (Doc. 6, exh. 5), and testimony of IRS Officers Boston, Christopher Rothweiler, and Michelle Ellis at the November 5, 2015 show cause hearing, the Court finds that the IRS has made out a prima facie case for enforcement of the April 2015 and June 2015 summonses issued to George Pate and Cookie G. Pate. By means of the declarations, and testimony, the IRS has clearly made the minimal showing necessary to satisfy its threshold burden that the Powell requirements were met. The declaration and testimony show that the information sought is (1) necessary in order to collect the federal tax liability of George and Cookie Pate as to unpaid joint income tax liabilities for the 2008 and 2009 taxable years; and the tax liability of George Pate for trust fund recovery penalty liability arising from social security taxes he failed to pay for the quarterly periods ending September 30, 2010, December 31, 2010, March 31, 2011, June 30, 2011, September 30, 2011 and December 31, 2011; and to obtain information in order for the IRS to determine the Pates' income tax liabilities for 2012 and 2013 when the Pates failed to file income tax returns; (2) the information sought is material and necessary to determining the tax liability of the Pates and the collectability of tax debts; (3) the information, with exception of the few specific documents identified in this order, are not in the possession of the IRS; and (4) the administrative steps required by the Internal Revenue Code have been followed. The declaration, and the testimony of IRS Officers Boston, Rothweiler, and Ellis also clearly show that there is no Department of Justice referral in effect, as defined by 26 U.S.C. § 7602(c). While there appears to have been a discussion by Officer Boston with two individual at the IRS as to the possibility of a criminal referral, and alleged comments made by Officer Boston to

8

Pates' legal counsel that either stated or inferred that the Pates' case might be referred for criminal prosecution, the facts before this Court clearly indicate there is no criminal referral in this case, nor has there ever been a criminal referral in this case. The Fifth Amendment privilege applies only when the taxpayer has a real and appreciable danger of self-incrimination. See United States v. Teeple, 286 F.3d 1047, 1050 (8th Cir. 2002). Here, the testimony heard by the Court from the involved IRS officers, including the Supervising IRS officer, affirms that this case is not referred or recommended for criminal prosecution, and never has been recommended or referred for criminal prosecution. The Court finds that an inquiry by Officer Boston with persons within the IRS as to a possible criminal referral, to which he was directed that this case does not meet the requirements, and contested statement(s) that Pates' legal counsel asserts that Officer Boston made regarding a possible criminal referral of this case, do not establish a real and appreciable danger of self-incrimination in this case. The Pates also fail to provide how the potential for an IRS Revenue Officer to seek approval for the filing of nominee tax liens against an individual's business entities implicates a reasonable danger of self-incrimination. The Pates' purported fear of self-incrimination appears largely based upon a mistaken belief regarding a criminal referral in this case and in a previous IRS case, neither of which occurred, and a disagreeable IRS officer.[2] Here, at the petition to enforce the IRS Summonses stage of these proceedings, the Pates can show no real and appreciable fear of self-incrimination. See United States v. Norwood, 343 F. Supp. 860, 866 (D.N.D. 2004), aff'd 420 F.3d 888 (8th Cir. 2005) (Asserting the mere possibility of a criminal prosecution is not the test for determining whether someone has properly invoked the Fifth Amendment privilege). See also United States v. Lindberg, 2006 WL 1371670, *1 (D. Minn. May 17, 2006) (Fifth Amendment privilege does not

---

2 The manner in which Officer Boston conducted himself and answered questions at the November 5, 2015 show cause hearing indicated to the Court, despite Officer Boston's assertions to the contrary, that Officer Boston does have a certain level of animosity toward the Pates and their legal counsel. The testimony revealed that Officer Boston was "frustrated" with the case and did approach his supervisor recommending that a criminal referral be made. He also consulted with an IRS technical advisor about the possibility of making a criminal referral. Both of these requests were rejected. The Court understands why the Pates believed Officer Boston may have been attempting to have them criminally prosecuted. Nonetheless, the Court does not believe Officer Boston's involvement in this case substantially prejudiced the Pates in this action or in any way affects the merits of the IRS summonses at issue in the Petition to Enforce IRS summonses filed the Government.

9

encompass a complete refusal to disclose information about income and is improperly asserted where respondent is merely speculating that he might be forced to incriminate himself); See also United States v. Snow, 2015 WL 914691, *3 (E.D. Tenn. March 3, 2015 (holding a respondent in contempt for failing to comply with a court order compelling compliance with an IRS summons and noting the absence of a Justice Department referral as a factor in determining that the respondent had no "substantial prospect of criminal prosecution" under the Fifth Amendment to justify non-compliance); Ryerson v. United States, 371 F. Supp.2d 1130, 1134 (D. Ariz. 2005) (rejecting a Fifth Amendment claim and enforcing an IRS summons given the lack of any referral to the Justice Department and the fact that the respondent "offered no evidence to the contrary" that the summons was issued as part of a criminal prosecution); United States v. Vanderzand, 1997 WL 572692, *6 (W.D. Mich. June 3, 1997) (rejecting a Fifth Amendment challenge to an IRS summons, as well as noting the lack of a Justice Department referral and respondent's failure to "establish any substantial prospect of criminal prosecution"). Accordingly, the Pates cannot make a blanket assertion of Fifth Amendment privilege as to their failure to comply with the April 2015 and June 2015 summonses. United States v. Argomiz, 925 F.2d 1349, 1356 (11th Cir. 1991) (as a general rule a blanket refusal to produce records or to testify will not support a Fifth Amendment claim). See also United States v. G&G Advertising, 762 F.2d 632, 634 (8th Cir. 1985) (blanket assertion of Fifth Amendment privilege is improper in response to IRS summons where there is no criminal referral); United States v. Burkholder, 2006 WL 2850555 *4 (W.D. Mo. Sept. 14, 2006). However, the law does allow for the Pates to make specific objections to specific questions or requests, but any such objections based on Fifth Amendment privilege cannot be based on speculation. See United States v. Norwood, 343 F. Supp. at 866; United States v. Dick, 694 F.2d 1117, 1119 (8th Cir. 1982). Moreover, the Fifth Amendment is not applicable to any non-testimonial data requested in the IRS summonses issued to George Pate or Cookie G. Pate. See Fisher v. United States, 425 U.S. 391 (1976); United States v. Olmer, 2004 WL 2536869 *4 (D. Nb. Sept. 22, 2004). The Fifth Amendment "protects a person only against being incriminated by his own compelled testimonial communications." Fisher v. United States, 425 U.S. at 409.

10

### III. Conclusion

Upon consideration of the motion to enforce the IRS summonses and related filings of the parties and evidence presented to the Court, the Court finds that IRS has established a prima facie case for enforcement of the summonses and respondent has failed to show the summonses were issued for an improper purpose or were otherwise deficient. Here, the evidence is clear that the summonses for both April 2015 and June 2015 were for the proper purpose of determining tax liability and related collection of any tax debts that may be owed as well as tax return filings for the years 2012 and 2013. There is not a Department of Justice formal referral in effect, nor has there ever been such a formal referral. The Pates have not shown the enforcement of the summonses would constitute an abuse of the Court's process. Finally, the Court notes that ample opportunity has been given to George Pate and Cookie G. Pate to comply with both or either of the summonses, even after the November 5, 2015 Show Cause hearing. Both George Pate and Cookie G. Pate continue in their failure to comply with the IRS administrative summonses. (See January 11, 2016 Status Report, doc. 9).

In light of the foregoing findings,

**IT IS HEREBY RECOMMENDED** that George Pate and Cookie G. Pate be ordered to comply with the April 2015 and June 2015 summonses at a date and time agreed upon by the IRS and respondents George Pate and Cookie G. Pate, but not later than sixty days after the service of any such order directing compliance with the summonses upon George Pate and Cookie Pate.

All parties and counsel are reminded they have fourteen days from the date of receipt of a copy of this report and recommendation within which to file and serve objections to the report and recommendation. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the report and recommendation which are accepted or adopted by the district judge, except on grounds of plain error or manifest injustice.

Dated this 28th day of January, 2016, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge